IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IN RE: § 
§ Case No. 24-42950
JOSEPH ANTHONY DOWDALL, §
§ Chapter 7
Debtor. §

## DEBTOR'S RESPONSE TO MMWKM'S OPPOSED MOTION TO EXTEND TIME TO FILE OBJECTIONS TO DISCHARGE

NOW COMES Joseph Dowdall ("**Debtor**"), and files this his Response to the Opposed Motion to Extend Time to File Objections to Discharge (the "**Extension Motion**") [Docket No. 36], and would respectfully show the Court the following:

1. This Bankruptcy Case was commenced on December 5, 2024, and the date first set for the Meeting of Creditors under Bankruptcy Code section 341 was January 24, 2025. A continued 341 Meeting was held on April 4, 2025, in which MMWKM Advisors, LLC ("**Creditor**" or "**MMWKM**") not only attended but questioned the Debtor.

2. Pursuant to Bankruptcy Rule 4004(a)(1), the last day to file a complaint objecting to discharge under section 727 was March 25, 2025. By order of this Court, that deadline was extended to April 24, 2025.

3. Pursuant to Bankruptcy Rule 4007(c), the last day to file a complaint objecting to dischargeability of a debt under section 523 was also March 25, 2025. However, this deadline was not extended by the Court.

4. On April 25, 2025, 29 days after the deadline for the filing of the deadline for the filing of complaints objecting to dischargeability of a debt pursuant to Bankruptcy Code section 523, the Creditor filed its section 523 Complaint to Determine Dischargeability (the "**Complaint**"). In the Complaint, the Creditor also sued to block the Debtor's discharge pursuant to Bankruptcy

Code section 727. As to the section 727 claim, the Complaint was filed the day after the filing deadline.

5. No Motion was filed by the Creditor to extend either the section 727 or the section 523 filing deadlines prior to the expiration of the deadlines. Any Motion to extend the deadline for the filing of section 727 or section 523 complaints must be filed before the expiration of the deadline. Bankr. R. 4004(b)(1)[1]; 4007(c).[2] A narrow exception exists with respect to discharge objections but is clearly not applicable, as discussed below.

6. There is no exception under Bankruptcy Rule 4007(c) to the requirement that a Motion to Extend with respect to dischargeability under section 523 must be filed before the expiration of the deadline. If a Motion to Extend the deadline is filed after the deadline passes, then Bankruptcy Rule 4007(c) requires that that such a Motion be denied.

7. Under Bankruptcy Rule 4004(b)(2), for a Motion to Extend with respect to discharge may only be filed after the time has expired if (B) the movant did not know the facts supporting the objection in time to object; and (C) the movant files the motion promptly after learning about them.

---

[1] Bankruptcy Rule 4004(b)(1) provides:

(b) EXTENDING THE TIME TO FILE AN OBJECTION.

(1) *Motion Before the Time Expires* . On a party in interest's motion and after notice and a hearing, the court may, for cause, extend the time to object to a discharge. The motion must be filed before the time has expired.

[2] Bankruptcy Rule 4007(c) provides:

(c) On a party in interest's motion filed before the time expires, the court may, after notice and a hearing and for cause, extend the time to file.

8. In the Extension Motion, the Creditor lists several facts that it claims justify its late filing. However, each of those facts was clearly and unequivocally known by Creditor well before the April 24 deadline, and therefore do not permit an extension. Those facts and the date that they were known by Creditor is as follows:

   a. The first substantive fact that the Creditor alleges for a discharge objection is that the Debtor entered into a separate property agreement more than 2 years prior to bankruptcy filing. This fact was known no later that April 4, 2025. In fact, the sole focus of the Creditor's questioning of the Debtor at his 341 Meeting on April 4, 2025, was the separate property agreement. A true and correct copy of the Transcript of the 341 Meeting is attached hereto as **Exhibit "A"** and incorporated by reference. On Page 17 of the Transcript the Bankruptcy Trustee asked the following question:

      > Q. Did you -- I believe I was told that you signed a *separate property agreement* with your wife?
      > A. That's correct.

      Beginning Page 53 of the April 4, 2025 Transcript, the Creditor's counsel asked the Debtor the following questions regarding the separate property agreement, showing without doubt that he knew about the agreement:

      > Q. So as you sit here today, can you tell the trustee and the creditors present here today whether the *separate property agreement* addresses the transfer of your income from WAM?
      >
      > . . . .
      >
      > Q. And can you confirm here on the record that you still have a copy of the *separate property agreement*?
      >
      > . . . .
      >
      > Is [the vehicle] subject to the *separate property agreement*, I guess, is what I'm asking?
      >
      > . . . .
      >
      > And then does she have any valuable personal property, jewelry, heirlooms, antiques, collectibles that would be considered subject to the *separate property agreement*?

The Complaint filed in the Adversary Proceeding conclusively proves that the Creditor knew about the separate property agreement before the filing deadline and had the ability to object. This is because the Complaint, filed only one day after the deadline, actually sues for money transferred to Debtor's wife through the separate property agreement. Paragraph 21 of the Creditor's own Complaint alleges that

> Fortunately, thanks to subpoenas sent to Worth Asset Management LLC, enough evidence survives to conclusively prove that Dowdall ***has squirreled away close to $1 million dollars of his assets to his wife, Leila***, both directly and through a company she formed.

Based on the above, there can be no question that the Creditor is disqualified from any extension of the discharge objection because it knew of the existence of the separate property agreement 20 days prior to the deadline to object.

b. The second fact that the Creditor alleges justifies a discharge objection is that monies he received from Worth Asset Management, LLC ("***WAM***"), "since they became salary, went to his wife's account. Again, this fact was well known by the Creditor and was the subject of a Turnover Motion that the Creditor filed in the State Court prior to the filing of the bankruptcy proceeding. But one need go no further than the Transcript of the 341 Meeting to show that this fact was known by the Creditor on April 4, 2025, where the Creditor's counsel asks:

> So as you sit here today, can you tell the trustee and the creditors present here today whether the separate property agreement addresses ***the transfer of your income from WAM***?

Again, the Complaint again proves without doubt that the Creditor was aware of those facts and could have sued on time. We know this because they actually sued objecting to discharge on those grounds. Paragraph 22 and 24 of the Complaint, filed the day after the deadline, state:

> 22. On November 1, 2022, just days before arbitration, ***Dowdall was having Worth Asset Management LLC's owner set up payments to an "LLC," LJ Dowdall Financial, LLC***:
>
> . . . .
>
> 24. ***The W-9 Dowdall submitted for "LJ Dowdall Financial LLC"*** to Worth Asset Management, LLC ***was signed by Leila Dowdall***:

Based on the above, and because this fact was the subject of a Turnover Motion of the Creditor pending in the State Court prior to the bankruptcy filing, and because they actually sued on these grounds one day late, there can be no question that the Creditor is disqualified from any extension of the discharge

objection because it knew of the existence of the separate property agreement several months prior to the deadline to object to discharge.

c. The third fact that the Creditor alleges justifies a discharge objection is that the Debtor received a tax refund post-petition. Again, the April 4, 2025 Transcript shows that the Debtor volunteered that information to the Trustee (without even being asked about a refund), and stated that he would voluntarily give it to the Trustee on the record (a fact which the Extension Motion dishonestly fails to disclose). The following is the Transcript testimony regarding the tax refund:

> Q. Have you prepared and filed your '24 return?
>
> A. Yes. And actually did that inadvertently and didn't realize the timing of it so I actually have a refund for the '24 tax return that I'm going to have to account for, you know, to apply towards the creditors.
>
> Q.· What is the amount of the refund?
>
> A.· It's roughly $7,000.

Based on the Debtor's testimony, the Creditor clearly knew about the refund no later than April 4, 2025, 20 days prior to the discharge filing objection, with plenty of time to file either an objection to discharge or motion for extension prior to the filing deadline.

d. The next fact alleged by the Creditor to object to the discharge is that the Debtor failed to produce the separate property agreement to the Creditor. This statement is highly misleading for 2 reasons. First, the Creditor has never request it be produced. The Trustee did in fact ask for it to be produced on Friday, April 4 at the 341 Meeting, and it was provided to him by email on Tuesday, April 8.

9. The Extension Motion also fails under Bankruptcy Rule 4004(b)(2)(C) because the Creditor did not move promptly after becoming aware of the above facts with plenty of time to file either an objection or an extension. The fact that they actually filed a Complaint, although a day late, alleging the above facts proves without doubt that they knew about the facts before the deadline and had adequate time to meet the deadline. It is also unquestionable that the Creditor could have timely filed the Complaint if they had not put off the filing until literally the very last

second on the deadline date, and that they also could have filed a Motion for Extension of Time prior to the deadline, the Bankruptcy Rules and case law require.

10. The part of the Extension Motion in Paragraph 6 dealing with material misstatements in a section 586(f) audit make no sense because there has been no audit conducted in this bankruptcy case.

11. Further, Extension Motion fails because none of the facts pled have anything to do with obtaining a discharge by fraud, or failing to report property of the estate or to surrender such property to the trustee. In fact, the opposite is true as the April 24 shows the Debtor advising the Trustee about the tax refund without the Trustee even asking a question about it and then *volunteering* to turn the tax return over to the Trustee.

12. The entirety of the Complaint is late filed and must be dismissed. This Court has held, in *In re Wisner, infra,* that:

> The Fifth Circuit has held that Bankruptcy Rules 4004(a) and 4007(c) should be "strictly construed" because the procedural rules "reflect[ ] the overall goal of the bankruptcy process to provide individual debtors a fresh start." *Yaquinto v. Ward (Matter of Ward)*, 978 F.3d 298, 302 (5th Cir. 2020).

13. Bankruptcy Rule 9006(b) states that the time periods set out in Bankruptcy Rules 4004 and 4007 may be extended "only to the extent and under the conditions stated in" the Rule. When a rule shows "a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019); *In re Wisner, infra.*

14. As in *Wisner,* the Creditor in this case had actual notice of the Debtor's bankruptcy case and participated in it and attended and asked questions in the 341 meeting and filed a proof

of claim. The Creditor was aware of the deadlines which were of record in the case, including the 727/523 Deadline. That deadline was clearly indicated on the Docket Sheet in the main case.

15. As this Court stated in another case,

> Although the court is empowered to extend the time "for cause," the motion to extend the time must be filed "before the time has expired." *Id.* ***This restriction on extending the time is expressly excluded from the court's general power to enlarge time periods after the fact. See FED. R. BANKR.P. 9006(b)(3). Thus, regardless of the circumstances, the Court has no power, after the bar date for filing a complaint has passed, to extend the time to file a complaint to determine dischargeability of a claim alleged to be excepted from discharge under §§ 523(a)(2)(A).***

*In re Young*, 425 B.R. 811, 816 (Bankr. E.D. Tex. 2010)(emphasis supplied).

16. As this Court further said in *In re Young, infra,*

> As the Fifth Circuit explained in *In re Robintech, Inc.,* 863 F.2d 393, 397–98 (5th Cir.1989): The purpose of the bankruptcy laws is quickly and effectively to settle bankrupt estates. *Katchen v. Landy,* 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 ... (1966). Under the Bankruptcy Code and rules, creditors play a zero-sum game in which a failure to navigate effectively through various intricate procedures can mean total defeat. Moreover, because such procedures are thought to be necessary to protect the bankrupt and the creditors, exceptions cannot be made every time a creditor claims hardship.

WHEREFORE, Debtor respectfully requests this Court to deny the Extension Motion, and that this Court grant such other relief as is just.

Dated: May 13, 2025.    Respectfully submitted,

*/s/ Gerrit M. Pronske*
Gerrit M. Pronske
Texas Bar No. 16351640
**SPENCER FANE LLP**
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: gpronske@spencerfane.com

**COUNSEL FOR DEFENDANT
JOSEPH DOWDALL**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on May 13, 2025, a true and correct copy of the foregoing was served upon all parties receiving notice via the Court's electronic transmission facilities.

*/s/ Gerrit M. Pronske*
Gerrit M. Pronske