**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 24-42950 |
| JOSEPH ANTHONY DOWDALL, | § | |
| | § | Chapter 7 |
| Debtor. | § | |

**DEBTOR'S RESPONSE TO OBJECTION OF MMWKM ADVISORS, LLC TO TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT**

Now comes Joe Dowdall ("***Debtor***"), the debtor in this Chapter 7 bankruptcy case, and files this his Response to the Objection (the "***Objection***") of MMWKM Advisors, LLC ("***MMWKM***") to the Trustee's Motion to Approve Compromise and Settlement ("***Motion***") filed on May 15, 2025, and would show as follows:

1. The MMWKM complaints contained in the Objection all stem out of the Debtor transferring his ***monthly incomed*** earned as a financial advisor from his sole employer, Worth Asset Management, LLC ("***WAM***"), to his wife to run their household, including raising two daughters, paying regular household expenses, and to prevent his sole source of income and ability to survive from being garnished. There are no other asset transfers that are complained about other than transfer of regular monthly income.

2. The settlement reached between the Debtor and the Trustee, Mark Weisbart, provides, at the Trustee's insistence, for the payment of the vast bulk of the amount of money left from this monthly income, after running an un-extravagant lifestyle, to the Trustee. This sum of money represents virtually all of the savings of both the Debtor and his wife, and of her separate property entity, and virtually all non-exempt assets of the Debtor, as of the date of the bankruptcy filing.

3. Debtor made the decision to settle with the Trustee all of the money in his wife's bank account and all but $15,000 in the wife's separate property bank account as of the date of the bankruptcy filing despite the fact that Texas law provides that current wages, and a partial amount of unpaid commissions, in the hands of the employer, are exempt from creditors under section 42.001(b)(1) of the Texas Property Code, which provides that "The following personal property is exempt from seizure. . .: current wages for personal services. . . ."[1]

4. The wages in the hands of WAM, Debtor's employer (current wages), were earned by the Debor under an Employment Contract that provided he was an employee. These funds were transferred directly from WAM (as exempt assets) to the Debtor's wife's separate property account at Wells Fargo account, meaning that they were exempt assets being directly transferred into a separate property account, and not touching Debtor's hands.

5. Based on these clear Texas exemptions, the Debtor has very strong defenses to any fraudulent transfer case that the Trustee could have brought. The Trustee negotiated very hard to get almost all of the Debtor's wife's cash, and the Debtor acquiesced to the Trustee's demands to try to put closure to this matter. The following are quotes from numerous Texas cases saying that ***exempt assets cannot be fraudulently transferred as a matter of law***, including Texas Supreme Court authority, Fifth Circuit authority, and a Northern District bankruptcy opinion from Judge Mullin:

> "It is well settled that a ***conveyance of exempt property may not be attacked on the ground that it was made in fraud of creditors***.
> Chandler v. Welborn, 156 Tex. 312, 316, 294 S.W.2d 801, 805 (1956)."
>
> The general rule. . . is that in order to invalidate a gift or other voluntary conveyance as fraudulent, the property must be of a kind to which the creditor can resort for

---

[1] [1] The unpaid commissions exemption is found in Texas Property Code section 42.001(d), which provides: "Unpaid commissions for personal services not to exceed 25 percent of the aggregate limitations prescribed by Subsection (a) are exempt from seizure and are included in the aggregate."

**DEBTOR'S RESPONSE TO OBJECTION OF MMWKM ADVISORS, LLC TO
TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT**  Page 2 of 6

payment of his debt, for otherwise he is not prejudiced by the conveyance. ***When property is immune from seizure by the creditor, he has no legal interest in it and cannot complain of its transfer, even though the conveyance was voluntary, with bad motive and to avoid creditors***." Citizens Nat. Bank at Brownwood, Tex. v. Turner, 89 F.2d 600, 601 (5th Cir. 1937).

"[A]s a general rule, to invalidate a gift or other voluntary conveyance as fraudulent, the property must be of a kind to which a creditor can resort for payment of his debts, and ***creditors cannot complain of transfer of property immune from seizure***." In re Porras, 312 B.R. 81, 99 (Bankr. W.D. Tex. 2004).

***"Where the sole purpose of a conveyance of exempt homestead property is to defraud creditors or place the land beyond their reach, a judgment creditor may not set aside the conveyance."*** In re Moody, 77 B.R. 566, 577 (S.D. Tex. 1987), aff'd sub nom. Matter of Moody, 862 F.2d 1194 (5th Cir. 1989).

"[I]t is well settled case law that a ***conveyance of exempt property may not be attacked on the ground that it was made in fraud of creditors***. The rationale for this rule is that because the law already has removed the homestead property from the reach of creditors, the conveyance of the property, whether fraudulent or not, does not deprive the creditors of any right they had against the property." In re Villarreal, No. 16-40636-MXM-13, 2019 WL 137569, at *2 (Bankr. N.D. Tex. Jan. 8, 2019, Judge Mark X. Mullen).

"It is well settled that ***homestead property is not subject to the payment of unsecured debts and that a conveyance thereof does not come within the purview of the statutes as a fraudulent conveyance***. Crow v. First Nat. Bank, 64 S.W.2d 377, 379 (Tex. Civ. App. 1933), writ refused

"***[A] transfer of exempt homestead property is not fraudulent as to general creditors under Texas law*** only because the transfer deprives the creditors of nothing to which they could look for satisfaction of their claims. The property is exempt from the outset. United States v. Estes, 450 F.2d 62, 65 (5th Cir. 1971).

***Under Texas law, exempt property is not subject to state fraudulent conveyance statutes***. In re Duncan, No. 02-46291, 2007 WL 2872411, at *5 (Bankr. E.D. Tex. Sept. 28, 2007).

5. Based on the well-settled law outlined above, Debtor and his family believe that they have a very strong defense to any fraudulent transfer claim that could be raised. However,

Debtor, the Debtor's wife (who is not a Judgment Debtor), and his family have been over-aggressively attacked by MMWKM for several years and merely desire closure and finality of this matter and have acceded to the Trustee's demands and agreed to give the Trustee in this case virtually all of their remaining savings as of the filing of the bankruptcy petition to finally resolve this matter.

6. MMKWM's argument that it has offered to pay the Trustee $170,000 (which is only $23,742.92 more than the amount of $146,257.08 agreed upon with the Trustee) is an empty increase because all of the amount of the difference would be distributed by the Trustee right back to MMKWM other than 5% of that difference, $1,187.14, that would be paid to the Trustee as an additional Trustee's commission pursuant to Bankruptcy Code section 326(a). So, in other words, the MMKWM proposal would net only an additional $1,187.14 into the Estate, which would all go to the Trustee, who prefers the settlement with the Debtor.

7. Further, and more importantly, if MMKWM paid the Estate their proposed $170,000, ***all of that money***, save and except the Trustee's fees, ***would be paid back to MMKWM***, as it is the only creditor. MMKWM would receive ***no benefit*** from payment from itself to itself. However, if MMKWM were to lose in their purchased claims against the Debtor, they would not receive a single dollar in this case. This is compared to the Settlement reached between the Debtor and the Trustee, where *all* of the $146,257.08 settlement amount would be paid to MMKWM *from the Debtor and his wife* other than the Trustee's fees. The Trustee has determined that this a better outcome for the estate, including for MMKWM.

8. Further, a large part of the "assets" proposed by MMKWM to be sold by the Trustee is the Trustee's right to object to the Debtor's discharge, a right being requested by MMKWM

because it late-filed its Complaint Objecting to Discharge.[2] Such a sale is not permissible. A trustee in bankruptcy cannot sell or assign the right to object to a debtor's discharge under U.S. bankruptcy law. That right is personal to the trustee (or another party in interest, like a creditor), and is not property of the estate under section 541(a) that can be monetized or transferred. Trustees have a fiduciary duty to the estate and must exercise independent judgment as to whether to bring a discharge action. The Trustee in this case has exercised his duties by determining that a settlement with the Debtor is a better alternative than to sell a right that no trustee can sell. Selling this right would violate that the Trustee's fiduciary duty and raise serious ethical and legal issues. MMKWM has not cited this Court to a single case that would permit such a sale. As the court said in *In re Moore*, 50 B.R. 661, 664 (Bankr. E.D. Tenn. 1985), "Discharge, the principal objective of a chapter 7 debtor, is a statutory right involving public policy considerations. It is *not* a proper subject for contractual negotiation." (Emphasis supplied by the court).

9.      With respect to the credit card statements that are discussed at length in MMWKM's Objection, the Debtor could not retrieve them from the Capital One because this company, like most credit card companies, revoke online access after the credit card is terminated. Due to the false inferences drawn by MMMKWM in its Objection, in line with their over-aggressive/tow the line approach, the Debtor made a written request for these statements from Capital One and delivered them to the Trustee immediately upon receipt.

---

[2] MMKWM is not abiding by this Court's ruling on their late filed claim, and has filed a pleading in their discharge Adversary Proceeding asking Judge Searcy (where the Adversary Proceeding resides) to "**treat the Complaint as timely filed.**" In that pleading, filed 2 days after this Court's ruling, MMKWM did not tell Judge Searcy that this Court already ruled on that issue. Debtor has filed a Motion for Rule 11 Sanctions in the Adversary based on the fact that this Court has ruled on that exact same issue in this exact same case and lacked candor to Judge Searcy to purposefully fail to tell the Judge Searcy that this Court already ruled on that matter.

**DEBTOR'S RESPONSE TO OBJECTION OF MMWKM ADVISORS, LLC TO
TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT**                Page 5 of 6

Dated: July 3, 2025.                    Respectfully submitted,

*/s/ Gerrit M. Pronske*
Gerrit M. Pronske
Texas Bar No. 16351640
**SPENCER FANE LLP**
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: gpronske@spencerfane.com

**COUNSEL FOR DEBTOR**

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on July 3, 2025, a true and correct copy of the foregoing was served upon all parties receiving notice via the Court's electronic transmission facilities.

*/s/ Gerrit M. Pronske*
Gerrit M. Pronske